1   PAUL L. REIN, Esq. (SBN 43053)
    PATRICIA BARBOSA, Esq. (SBN 125865)
2   JULIE MCLEAN, Esq. (SBN 215202)
    LAW OFFICES OF PAUL L. REIN
3   200 Lakeside Dr., Suite A
    Oakland, CA 94612
4   (510) 832-5001

5   Attorneys for Plaintiffs:
    BERNARD WALKER; LARRY BISCAMP;
6   VICTOR MCPETERS

7   RONALD BUSHNER, Esq. (SBN 98352)
    REBECCA BENHURI, Esq. (SBN 209443)
8   WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
    525 Market St., 17th Floor
9   San Francisco, CA 94105
    (415) 433-0990

10  Attorneys for Defendants:
11  A.F. EVANS COMPANY, INC.; EVANS
    PROPERTY MANAGEMENT, INC.;
12  OCEAN VIEW GARDENS, LLC

13  RONALD B. BASS, Esq. (SBN 89022)
    LINDA H. LEONG, Esq. (SBN 203500)
14  LAW OFFICES OF RONALD B. BASS
    560 Lennon Lane, Suite 100
15  Walnut Creek, California 94598-2455
    Telephone: (925) 256-9855
16  Facsimile: (925) 943-1427

17  Attorneys for Defendants, A.F. EVANS COMPANY, INC.,
    EVANS PROPERTY MANAGEMENT, INC. and
18  OCEAN VIEW GARDENS, LLC

19              UNITED STATES DISTRICT COURT
20             NORTHERN DISTRICT OF CALIFORNIA

21  BERNARD WALKER; LARRY          CASE NO. C05-3344 JL
    BISCAMP; VICTOR MCPETERS,      Civil Rights
22
             Plaintiffs,
23  v.                             CONSENT DECREE AND [~~PROPOSED~~]
                                   ORDER
24  OCEAN VIEW GARDENS, LLC, A.F.
    EVANS COMPANY, INC.; EVANS
25  PROPERTY MANAGEMENT, INC.
    and DOES 1-25, Inclusive,
26
             Defendants.
27
    _____/
28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case**
**No. C05-3344 JL**                    — 1 —

C:\Documents and Settings\christine\Local Settings\Temporary Internet Files\OLK729 Consent Decree.doc

# CONSENT DECREE AND ORDER

1.      Plaintiffs BERNARD WALKER, LARRY BISCAMP, and VICTOR MCPETERS filed their Complaint on August 17, 2005, alleging that defendants had violated their right to full use and enjoyment of their rental housing based on plaintiffs' disabilities, in violation of provisions of the Federal Fair Housing Act, 42 USC §3601 et seq, the Rehabilitation Act of 1974, 29 USC §705, the California Fair Employment and Housing Act, Government Code §12900 et seq., and California Civil Code § 54.1, at the housing complex known as "Ocean View Gardens Apartments" at 1725A, 1727A, and 1729A 5th Street, in Berkeley, California, and adjoining common grounds, from June 2004 to the present.

2.      Defendants OCEAN VIEW GARDENS, LLC; A.F. EVANS COMPANY, INC.; and EVANS PROPERTY MANAGEMENT, INC. ("Defendants") deny all of the allegations raised by plaintiffs in their Complaint ("Complaint") and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiffs' Complaint filed in this action. The parties hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation.

## JURISDICTION:

3.      The parties to this consent decree agree that this Court has jurisdiction of this action pursuant to 28 USC §1331 for alleged violations of the Federal Fair Housing Act, 42 USC §3601 et seq, and the Rehabilitation Act of 1974, 29 USC §705. Pursuant to supplemental jurisdiction, attendant and related causes of action arising from the same facts are also properly brought under California law, including but not limited to violations of California Fair Employment and Housing Act, Government Code §12900 et seq., and California Civil Code § 54.1.

4.      In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this consent decree agree to entry of this Order to resolve all claims regarding injunctive relief claims raised in the Complaint filed with this Court on August 17, 2005.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case
No. C05-3344 JL** — 2 —

1    Accordingly, they agree to the entry of this Order without trial or further adjudication of any

2    issues of fact or law concerning plaintiffs' claims for injunctive relief.

3            WHEREFORE, the parties to this consent decree hereby agree and stipulate to

4    the Court's entry of this Consent Decree and Order, which provides as follows:

5

6    **SETTLEMENT OF INJUNCTIVE RELIEF**:

7        5.      This Order shall be a full, complete, and final disposition and settlement of

8    Plaintiffs' claims against Defendants for injunctive relief that have arisen out of the subject

9    Complaint.  The parties agree that there has been no admission or finding of liability or

10   violation of federal and/or California civil rights laws, and this Consent Decree and Order

11   should not be construed as such.

12       6.      The parties agree and stipulate that the corrective work agreed to by this

13   Consent Decree will be performed in compliance with the standards and specifications for

14   disabled access as set forth in the California Code of Regulations, Title 24-2 and the

15   Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and related state and

16   federal regulations for housing facilities, unless other standards are specifically agreed to in

17   this Consent Decree, all of which relevant codes are attached hereto by reference as

18   **Attachment A, Exhibit 1**.

19       a)      Remedial measures:  The injunctive relief agreed upon by the parties is attached

20   as **Attachment A** to this Consent Decree, and is incorporated herein by reference as if fully set

21   forth in this document.  Defendants agree to undertake the injunctive relief on the terms as set

22   forth in **Attachment A**.  Plaintiffs agree to undertake the notice provisions for any future

23   complaints or requests for modification or repair of their respective apartments during their

24   tenancy at the Oceanview Apartments, as set forth in **Attachment B**, and incorporated herein

25   by reference.

26

27   **DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS**:

28       7.      The parties have not reached an agreement regarding plaintiffs' claims for

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case
No. C05-3344 JL**                    – 3 –

1   damages, attorney fees, litigation expenses and costs.  The parties agree that plaintiffs'

2   monetary claims for damages, attorney fees, litigation expenses, and costs will be determined

3   by further negotiations between the parties, or through litigation or motions to Magistrate

4   Judge James Larson, unless otherwise directed by the Court.

5   **ENTIRE CONSENT DECREE AND ORDER**:

6       8.      This Consent Decree and Order constitutes the entire agreement between the

7   parties on the matters of injunctive relief, and no other statement, promise, or agreement, either

8   written or oral, made by any of the parties or agents of any of the parties, that is not contained

9   in this written Consent Decree and Order, shall be enforceable regarding the matters of

10  injunctive relief described herein.  This consent decree applies to plaintiffs' claims for

11  injunctive relief only and does not resolve plaintiffs' claims for monetary damages, attorney's

12  fees, litigation expenses and costs, which will be determined by further negotiations between

13  the parties, litigation or motions to the Court.

14

15  **CONSENT DECREE BINDING ON PARTIES AND SUCCESSORS IN INTEREST**:

16      9.      This Consent Decree and Order shall be binding on Plaintiffs VICTOR

17  MCPETERS, and LARRY BISCAMP; Defendants, OCEAN VIEW GARDENS, LLC; A.F.

18  EVANS COMPANY, INC.; and EVANS PROPERTY MANAGEMENT, INC.; and any

19  successors in interest.  The parties have a duty to so notify all such successors in interest of the

20  existence and terms of this Consent Decree and Order during the period of the Court's

21  jurisdiction of this Consent Decree.

22

23  **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO**

24  **INJUNCTIVE RELIEF ONLY:**

25      10.     Each of the parties to this Consent Decree understands and agrees that there is a

26  risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them

27  will incur, suffer, or experience some further loss or damage with respect to the Lawsuit which

28  are unknown or unanticipated at the time this Consent Decree is signed.  Except for all

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case**
**No. C05-3344 JL**                — 4 —

1   obligations required in this Consent Decree, the parties intend that this Consent Decree apply to

2   all such further loss with respect to the Lawsuit, except those caused by the parties subsequent

3   to the execution of this Consent Decree. Therefore, except for all obligations required in this

4   Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands,

5   actions and causes of action by the parties to this Consent Decree with respect to the Lawsuit,

6   whether the same are known, unknown or hereafter discovered or ascertained.

7         11.    Except for all obligations required in this Consent Decree, and exclusive of the

8   referenced continuing claim for damages, statutory attorney fees, litigation expenses and costs,

9   each of the parties to this Consent Decree, on behalf of each, their respective agents,

10  representatives, predecessors, successors, heirs, partners and assigns, releases and forever

11  discharges each other Party and all officers, directors, shareholders, subsidiaries, joint

12  venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance

13  carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands,

14  actions, and causes of action of whatever kind or nature, presently known or unknown, arising

15  out of or in any way connected with the Lawsuit.

16        12.    The provisions of Section 1542 of the California Civil Code are hereby

17  expressly waived.  Section 1542 provides as follows:

18      A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

19      CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR

20      AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR

21      HER  MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT

22      WITH THE DEBTOR.

23  This waiver applies to the injunctive relief aspects of this action only and does not include

24  resolution of plaintiffs' claims for damages, attorney fees, litigation expenses and costs.

25

26  **TERM OF THE CONSENT DECREE AND ORDER**:

27        13.    The Court shall retain jurisdiction of this action to enforce provisions of this

28  Order for two years after the entry of this Consent Decree, or until the injunctive relief

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case
No. C05-3344 JL**      — 5 —

C:\Documents and Settings\christine\Local Settings\Temporary Internet Files\OLK7E\Consent Decree.doc

1   contemplated under this Consent Decree is completed, whichever occurs later.

2   **SEVERABILITY**:

3       14.    If any term of this Consent Decree and Order is determined by any court to be

4   unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in

5   full force and effect.

6

7   **SIGNATORIES BIND PARTIES**:

8       15.    Signatories on behalf of the parties represent that they are authorized to bind the

9   parties to this Consent Decree and Order.  The Consent Decree may be signed in counterparts

10  and a facsimile signature shall have the same force and effect as an original signature.

11  Dated: ~~January~~ February 7, 2007

12

13

14                                       Plaintiff VICTOR MCPETERS

14  Dated: January 19, 2007

15

16

17                               Plaintiff LARRY BISCAMP

18  Dated: January     , 2007

19

20

21                                Defendant OCEAN VIEW GARDENS, LLC

22  Dated: January     , 2007

23

24                               Defendant A.F. EVANS COMPANY, INC.

25  Dated: January     , 2007

26

27                             Defendant EVANS PROPERTY

28                             MANAGEMENT, INC.

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and Order: Case
No. C05-3344 JL**

— 6 —

C:\Documents and Settings\dsvita\Local Settings\Temporary Internet Files\OLK72F\Consent Decree.doc

1    APPROVED AS TO FORM:

2

3    Dated: January /9 , 2007

4                               PAUL L. REIN
                                PATRICIA BARBOSA

5                               JULIE MCLEAN
                              LAW OFFICES OF PAUL L. REIN

6

7                               Attorneys for Plaintiffs
                              BERNARD WALKER; LARRY BISCAMP;
                              VICTOR MCPETERS

8

9    Dated: January     , 2007         RONALD BUSHNER

10                               REBECCA BENHURI
                              WILSON ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP

11

12                               Attorneys for Defendants

13                               A.F. EVANS COMPANY, INC.; EVANS
                              PROPERTY MANAGEMENT, INC.; OCEAN

14                               VIEW GARDENS, LLC

15    Dated: January     , 2007         RONALD B. BASS
                              LINDA H. LEONG

16                               LAW OFFICES OF RONALD B. BASS

17

18                               Attorneys for Defendants

19                               A.F. EVANS COMPANY, INC.; EVANS
                              PROPERTY MANAGEMENT, INC.; OCEAN
                              VIEW GARDENS, LLC

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and Order: Case No. C05-3344 JL

− 8 −

1

## ORDER

2

3    **PURSUANT TO STIPULATION, AND FOR GOOD CAUSE SHOWN, IT IS SO**

4    **ORDERED.**

5    Dated:___ February 12, 2007

6



7

8    HON.
U.S.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and Order: Case
No. C05-3344 JL

— 10 —

**Attachment A to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 1 of 5**

Pursuant to the terms of the Consent Decree agreed to in the above-cited case, the following injunctive relief is agreed upon between the parties as full and complete resolution of plaintiffs' claims for injunctive relief as set forth in the Complaint filed on August 17, 2005.

The parties agree and stipulate that all work performed herein will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2 and the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and related state and federal regulations for housing facilities, unless other standards are specifically agree to in this Consent Decree, all of which relevant codes are attached hereto by reference as Attachment A, **Exhibit 1**.

Timeline for completion of corrective work:
The timeline for completion of the work is set forth below for each specific item of the corrective work contemplated by the Consent Decree.

Status of Work/Notice of Delays:
Defendants or their counsel will notify plaintiffs' counsel in writing when the agreed upon work is completed, but will in any case provide a written status report of the corrective work by no later than June 30, 2007. Defendants or their counsel will notify plaintiffs' counsel in writing within 30 days of discovering any unforeseen delay to the completion dates set forth below, and the parties agree to negotiate in good faith to resolve the delay and establish a new deadline for any of the delayed work that is due to circumstances reasonably beyond defendants' control, which may include but are not limited to unforeseen delays by contractors, backlogs by contractors and difficulties obtaining entry to an apartment, provided that defendants have provided timely notice. Plaintiffs' counsel agrees to notify defendant's counsel prior to filing an action for enforcement of the notice provision to allow defendant to cure the notice deficiency.

Accommodations for plaintiffs during construction:

Defendants have already completed some of the corrective work requested by plaintiffs. The work that remains to be done, and any special provisions with respect to that work, are set forth below. Some of the work to be done may require that plaintiffs leave their apartment for the duration

Attachment A to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 2 of 5

of the work.  Defendants will provide plaintiffs with no less than 5 business days notice of their need to leave their apartment to permit construction of the corrective work that requires them to vacate their apartments.

### Larry Biscamp:

1. <u>Back Gate to Apartment</u>: Defendant will install a 1x10 board at the bottom of the gate and will attach a kickplate to that board. This work will be completed by January 30, 2007.

2. <u>French Doors to the Master Bedroom</u>:  The French doors leading to the backyard from the master bedroom will be replaced. This work will be completed by April 30, 2007.  See attached regulations.

3. <u>Back entrance to the Apartment</u>:  Defendant will modify the slope and/or raise the threshold at the back entrance to the apartment to stop water intrusion into the back entrance.  If defendants choose to raise the threshold, then this work shall be completed by February 28, 2007.  If defendants choose to install new concrete in the area, then the work shall be completed by April 30, 2007.  See attached regulations.

4. <u>Kickplates on doors</u>:  Defendant will install kickplates on both sides of any interior or exterior apartment doors that presently do not have kickplates.  This work will be completed by February 15, 2007.

5. <u>Restroom corrections</u>:  Defendant will replace the existing bathtub with the bathtub proposed by plaintiff as attached for reference purposes only to this Attachment as **Exhibit 2**.  The existing cabinet behind the bathtub will be removed and will be replaced by a tub bench at or about slightly higher than the new larger bathtub.  There will be approximately 28 inches of clearance between the toilet and the new tub bench.  Defendant will install grab bars at locations and at heights provided by the attached code.  Defendant will also install one medicine cabinet over the toilet and one medicine cabinet on the counter top

Attachment A to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 3 of 5

against the back wall next to the toilet. Plaintiff agrees to accept the toilet presently installed at the apartment. The "new cabinet floor to bottom of coffer with mirrored doors" will not be installed because an acceptable cabinet is already in place. This work will be completed by March 30, 2007. The parties anticipate that Mr. Biscamp will not be able to use the bathroom during this construction. Defendant will, at plaintiff Biscamp's written option, either provide Mr. Biscamp with the use of a bathroom in the community room, or in another vacant apartment, or will pay Mr. Biscamp $40 per day from the commencement of bathroom demolition until the bathroom is operable again to reside away from the apartment, or will arrange for Mr. Biscamp to stay at the Holiday Inn Express with a $20 per day meal allowance during this period.

6.  Ceiling work in restroom: Defendant will complete the repair of the ceiling over the toilet where an opening was made to check for a water leak by plastering and repainting to the extent necessary. The work shall be completed by February 28, 2007.

7.  Defendants will water test the front windows to ensure they are water tight. In the event the front windows are found not to be water tight, these windows shall be repaired or replaced so as to be water tight by no later than March 31, 2007.

**Victor McPeters**

1.  Gas Oven: Defendant will lower the oven in plaintiff's kitchen to approximately the same height as the oven in Mr. Biscamp's unit to allow Mr. McPeters to open and use the oven. This work shall be completed by March 30, 2007. In addition, Plaintiff will call PG&E for an inspection of the gas connection for the stove and inform defendant if any corrections must be made to the gas connection.

2.  Kickplates on doors: Defendant will install kickplates on both sides of any interior or exterior apartment door that presently

Attachment A to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 4 of 5

does not have a kickplate. This work will be completed by
February 15, 2007.

3    Back Gate: Defendant will install a wire opener to permit
plaintiff to independently open the gate from the outside.
Plaintiff will provide defense counsel with the height of the
hole through which the wire will be pulled and will describe the
type of handle that plaintiff desires to have by no later than
January 15, 2007. This work will be completed by February
10, 2007. See attached regulations re hardware.

4    *shower* Restroom corrections: Defendant will replace the existing
~~bathtub~~ with the bathtub proposed by plaintiff as attached for
reference purposes only to this Attachment as **Exhibit 2**. The
existing cabinet behind the bathtub will be removed and will be
replaced by a tub bench at or about slightly higher than the new
larger bathtub. There will be approximately 28 inches of
clearance between the toilet and the new tub bench. Defendant
will install grab bars at locations and at heights provided by the
attached code. Defendant will also install one medicine cabinet
over the toilet and one medicine cabinet on the counter top
against the back wall next to the toilet. Plaintiff agrees to
accept the toilet presently installed at the apartment. The "new
cabinet floor to bottom of coffer with mirror doors" will not be
installed because an acceptable cabinet is already in place. This
work will be completed by March 30, 2007. The parties
anticipate that Mr. McPeters will not be able to use the
bathroom during this construction. Defendant will, at plaintiff
McPeters' written option, either provide Mr. McPeters with the
use of a bathroom in the community room, or in another vacant
apartment, or will pay Mr. McPeters $40 per day to reside away
from the apartment for the period until the bathroom is operable
again, or will arrange for for Mr. McPeters to stay at the
Holiday Inn Express until the bathroom is operable again, with
a meal allowance of $20 per day until the bathroom is operable
again.

LB

**Attachment A to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 5 of 5**

5     Portable Heater and Credit:  Defendant has provided plaintiff
      with a portable heater in lieu of installing drapes in the
      apartment.  Defendant will credit plaintiff with $5.00 off the
      electrical bill each month.  The intention is that the credit
      approximately equals the additional cost of the use of the
      heater.  Plaintiff will inform defendant if the cost of the use of
      the heater exceeds the $5.00 credit per month.  The parties will
      reconsider the amount of the credit if the cost of the heater
      significantly exceeds the credit provided by defendant.


**Common Areas**:

Ramps in the path of travel to the front door of the apartments:  The
parties have agreed to permit defendant to choose the manner in
which it will provide ramp access leading from the public right of way
to the apartment entrances.  Plaintiff is willing to accept the
installation of a wheel guard on the existing ramps only, without any
additional modification to the ramps that might otherwise be required
by applicable laws and regulations.  Defendant may also replace the
ramps with compliant ramps at its discretion.  Defendant will inform
plaintiff of its choice of corrections by February 28, 2007, and shall
then put any work out to bid by March 30, 2007, and shall have
construction completed by May 31, 2007.   See attached regulations.

Attachment B to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 1 of 4

Plaintiff Victor McPeters and plaintiff Larry Biscamp continue to reside at the Oceanview Apartments. Plaintiff Bernard Walker no longer lives there.

The parties wish to make every effort to assure that (1) any issues the parties may have relating to the physical condition of Victor McPeters' apartment and Larry Biscamp's apartment are addressed promptly; and (2) any perceived need for future litigation is minimized.

Accordingly, the parties agree as follows. This agreement applies to any requests for modifications, maintenance or repairs to the McPeters and Biscamp apartments that Mr. McPeters or Mr. Biscamp may make at any time in the future during their respective tenancies. As used below, the word "Tenant" refers to Mr. McPeters with respect to issues relating to Mr. McPeters' apartment, and refers to Mr. Biscamp with respect to issues relating to Mr. Biscamp's apartment.

1. Procedure For Resolving Issues Relating to Any Future Requests For Modifications, Maintenance Or Repairs

Tenant will cooperate with Oceanview's management to allow repairmen, maintenance workers and contractors to enter into Tenant's apartment in order to address any future requests for modifications, maintenance or repairs. The repairman or management shall call the tenant to arrange for a mutually acceptable period of four hours during which the repairman can arrive to address the tenant's request for modifications, maintenance or repairs. Tenant shall be required to grant access to the repairman during the 4-hour period and allow the repairman to make the repair from the time of arrival onward, but not past 5:00 p.m. If the job is not completed by that time, then the parties shall schedule a new mutually acceptable 4-hour window for the repairman to obtain access to continue making the repair, from the time of arrival onward, but not past 5:00 p.m.

If the tenant does not comply with his duty to provide both access and adequate time for repair, as set forth in the last paragraph, then the repairman will not be expected to complete the repair or modification at that time, and the repair may be placed at the end of the repairman's then current list of repairs for other tenants, and the parties may then seek to arrange for another mutually acceptable

Attachment B to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 2 of 4

four-hour window in which the repairman can arrive, after the repairman takes care of all other then pending repairs for all other tenants.

If an emergency repair is required, then the provisions above shall not apply, and the provisions of California law and tenant's lease relating to such emergency repairs shall apply.

If Tenant fails to allow access as required above on three or more consecutive occasions with respect to the same repair, the failure shall be considered a lease violation for conduct that interferes with the proper administration of the apartment complex.

Each Tenant will be required to sign an acknowledgment after a particular job is completed, specifying that the job was completed satisfactorily, or alternately, specifying the problems with the job that still remain. The Tenant shall sign a work order, acknowledging completion of the job, at the time of the job, and shall notify management at the Oceanview office within two weeks after any deficiency in the job becomes apparent.

Whenever Tenant requests modification, maintenance or repairs to his apartment, Tenant shall first call the apartment manager to request modification, maintenance or repairs. Within 10 days, the manager will contact Tenant if necessary to discuss the requested work, and either the requested work shall be commenced and pursued diligently to completion, or if the manager believes the work cannot be commenced within 10 days or does not agree to do the work requested, the manager will contact his superiors as determined by defendant and defendant shall make a determination whether the work shall be done, and shall then provide a written response to plaintiff explaining the reason the requested work will not be commenced within 10 days, or why Tenant's requested work will not be done and will name a designated person to conduct a meet and confer to discuss defendant's response with Tenant. Tenant may then request a meet and confer within 10 days with whomever defendant designates as the person for the meet and confer to discuss his request. Defendant's representative will meet with Tenant to discuss any issues involved in the request, what the proposed resolution is, and to set a timetable for further action, if further action is to be taken.  The meet and confer may take place by telephone or

Attachment B to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 3 of 4

in person at the Oceanview Apartments. Both parties agree to act in good faith and provide any information required to make any decisions.

If Tenant is still not satisfied with the outcome after meeting and conferring as set forth above, or if defendant's representatives do not respond to Tenant as set forth above, Tenant shall, prior to filing any lawsuit, properly fill out and send the notice attached hereto as **Exhibit 3** to Bill McClure, Evans Property Management, 1000 Broadway, Suite 300, Oakland, California, 94607, and shall deliver a copy to the Oceanview Manager and shall cooperate with defendant's management and shall attend any meetings by telephone or at Oceanview that defendant requests to try to resolve the matter to be conducted within 10 business days of sending defendant notice as set forth in **Exhibit 3**. Both parties agree to act in good faith and provide any information required to make any decisions. In the event defendant does not agree to undertake the repairs, maintenance or alterations on terms agreeable to Tenant, defendant will provide a written response containing the basis for defendant's decision within 10 days of the meet and confer.

Plaintiff shall send the notice attached as **Exhibit 3** by Federal Express, with all charges prepaid. Concurrent with the signing of this consent decree, defendants are providing plaintiffs Biscamp and McPeters with one such properly addressed Federal Express envelope with all charges prepaid. If a plaintiff uses the envelope to send the notice attached as **Exhibit 3**, plaintiff may request that defendants provide plaintiff with another such envelope. Defendant shall provide it for future use. The request shall be made to defendant's portfolio manger in charge of the Oceanview Gardens Apartments at the time in question.

If plaintiff does not receive a written response that is acceptable to plaintiff within 30 days after sending the notice set forth as **Exhibit 3** or within 10 days after a meet and confer with management pursuant to the last paragraph, whichever is latest, then plaintiff is free to commence any action provided for in law.

The procedures set forth in this section shall govern the relations between the parties relating to modifications, maintenance, repair and other matters relating to the physical condition of Tenant's apartment and the physical condition of the surrounding grounds for the duration of Tenant's tenancy at Oceanview. No new

**Attachment B to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 4 of 4**

lawsuit shall be filed alleging any violation of any law relating to the physical condition of the apartment or grounds or alleging a failure to accommodate a disability unless Tenant has first followed the procedures set forth herein. In this way, the parties hope that all complaints will receive very careful attention in a timely manner and that there will be no occasion or need for any litigation.



**4.1.6 Accessible Buildings: Alterations.**

   (3) Special Technical Provisions for Alterations to Existing Buildings and Facilities:

   (a) Ramps: Curb ramps and interior or exterior ramps to be constructed on sites or in existing buildings or facilities where space limitations prohibit the use of a 1:12 slope or less may have slopes and rises as follows:

   (i) A slope between 1:10 and 1:12 is allowed for a maximum rise of 6 inches (150 mm).

   (ii) A slope between 1:8 and 1:10 is allowed for a maximum rise of 3 inches (75 mm). A slope steeper than 1:8 is not allowed.

**4.2.1* Wheelchair Passage Width.** *The minimum clear width for single wheelchair passage shall be 32 in (815 mm) at a point and 36 in (915 mm) continuously (see <u>Fig. 1</u> and <u>24(e)</u>).  Appendix Note*



**Figure 1**
**Minimum Clear Width for Single Wheelchair**

**A4.2.1 Wheelchair Passage Width.**

(1) Space Requirements for Wheelchairs. Many persons who use wheelchairs need a 30 in (760 mm) clear opening width for doorways, gates, and the like, when the latter are entered head-on. If the person is unfamiliar with a building, if competing traffic is heavy, if sudden or frequent movements are needed, or if the wheelchair must be turned at an opening, then greater clear widths are needed. For most situations, the addition of an inch of leeway on either side is sufficient. Thus, a minimum clear width of 32 in (815 mm) will provide adequate clearance. However, when an opening or a restriction in a passageway is more than 24 in (610 mm) long, it is essentially a passageway and must be at least 36 in (915 mm) wide.

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 2 of 26**

*(2) Space Requirements for Use of Walking Aids.* Although people who use walking aids can maneuver through clear width openings of 32 in (815 mm), they need 36 in (915 mm) wide passageways and walks for comfortable gaits. Crutch tips, often extending down at a wide angle, are a hazard in narrow passageways where they might not be seen by other pedestrians. Thus, the 36 in (915 mm) width provides a safety allowance both for the person with a disability and for others.

*(3) Space Requirements for Passing.* Able-bodied persons in winter clothing, walking straight ahead with arms swinging, need 32 in (815 mm) of width, which includes 2 in (50 mm) on either side for sway, and another 1 in (25 mm) tolerance on either side for clearing nearby objects or other pedestrians. Almost all wheelchair users and those who use walking aids can also manage within this 32 in (815 mm) width for short distances. Thus, two streams of traffic can pass in 64 in (1625 mm) in a comfortable flow. Sixty inches (1525 mm) provides a minimum width for a somewhat more restricted flow. If the clear width is less than 60 in (1525 mm), two wheelchair users will not be able to pass but will have to seek a wider place for passing. Forty-eight inches (1220 mm) is the minimum width needed for an ambulatory person to pass a nonambulatory or semi-ambulatory person. Within this 48 in (1220 mm) width, the ambulatory person will have to twist to pass a wheelchair user, a person with a service animal, or a semi-ambulatory person. There will be little leeway for swaying or missteps (see Fig. A1).



**Fig. A1**
**Minimum Passage Width for One Wheelchair**
**and One Ambulatory Person**

**Figure A1**
**Minimum Passage Width for One Wheelchair and One Ambulatory Person**

**4.2.4\* Clear Floor or Ground Space for Wheelchairs.**

**4.2.4.1 Size and Approach.** The minimum clear floor or ground space required to accommodate a single, stationary wheelchair and occupant is 30 in by 48 in (760 mm by 1220 mm) (see Fig. 4(a)). The minimum clear floor or ground space for wheelchairs may be positioned for forward or parallel approach to an object (see Fig. 4(b) and (c)). Clear floor or ground space for wheelchairs may be part of the knee space required under some objects.





ADAAG Codes
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 3 of 26



**Figure 4a**
**Clear Floor Space**



**Figure 4b**
**Forward Approach**

***4.2.4.2 Relationship of Maneuvering Clearance to Wheelchair Spaces.*** *One full unobstructed side of the clear floor or ground space for a wheelchair shall adjoin or overlap an accessible route or adjoin another wheelchair clear floor space. If a clear floor space is located in an alcove or otherwise confined on all or part of three sides, additional maneuvering clearances shall be provided as shown in Fig. 4(d) and (e).*





NOTE: x ≤ 24 in (610 mm).



NOTE: x ≤ 15 in (380 mm).

**Figure 4d**
**Clear Floor Space in Alcoves**



NOTE: If x > 24 in (610 mm), then an additional
maneuvering clearance of 6 in (150 mm) shall be
provided as shown.



NOTE: If x > 15 in (380 mm), then an additional
maneuvering clearance of 12 in (305 mm) shall be
provided as shown.

**Figure 4e**
**Additional Maneuvering Clearance for Alcoves**

**4.2.4.3 Surfaces for Wheelchair Spaces.** Clear floor or ground spaces for wheelchairs shall
comply with 4.5. *Appendix Note*

> **A4.2.4 Clear Floor or Ground Space for Wheelchairs.** *The wheelchair and user shown
> in Fig. A3 represent typical dimensions for a large adult male. The space requirements in
> this guideline are based upon maneuvering clearances that will accommodate most
> wheelchairs. Fig. A3 provides a uniform reference for design not covered by this
> guideline.*

LB

ADAAG Codes
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 5 of 26





NOTE: Footrests may extend further for tall people

Fig. A3
Dimensions of Adult-Sized Wheelchairs

Figure A3
**Dimensions of Adult-Sized Wheelchairs**

**4.2.5\* Forward Reach.** If the clear floor space only allows forward approach to an object, the maximum high forward reach allowed shall be 48 in (1220 mm) (see *Fig. 5(a)*). The minimum low forward reach is 15 in (380 mm). If the high forward reach is over an obstruction, reach and clearances shall be as shown in *Fig. 5(b)*. *Appendix Note*







Figure 5a
**High Forward Reach Limit**

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 6 of 26**



NOTE: x shall be ≤ 25 in (635 mm); z shall be ≥ x, When x < 20 in (510 mm), then y shall be 48 in (1220 mm) maximum. When x is 20 to 25 in (510 to 635 mm), then y shall be 44 in (1120 mm) maximum.

**Figure 5b**
**Maximum Forward Reach over an Obstruction**

**4.2.6\* Side Reach**. *If the clear floor space allows parallel approach by a person in a wheelchair, the maximum high side reach allowed shall be 54 in (1370 mm) and the low side reach shall be no less than 9 in (230 mm) above the floor (Fig. 6(a) and (b)). If the side reach is over an obstruction, the reach and clearances shall be as shown in Fig 6(c).* _Appendix Note_



**Figure 6(a)**
**Clear Floor Space - Parallel Approach**

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 7 of 26**



**Figure 6(b)**
**High and Low - Side Reach Limits**



**Figure 6(c)**
**Maximum Side Reach over Obstruction**

*A4.2.5 & A4.2.6 Reach. Reach ranges for persons seated in wheelchairs may be further clarified by Fig. A3(a). These drawings approximate in the plan view the information shown in Fig. 4, 5, and 6.*

*The following table provides guidance on reach ranges for children according to age where building elements such as coat hooks, lockers, or controls and operating mechanisms are designed for use primarily by children. These dimensions apply to either forward or side reaches. Accessible elements, controls, and operating mechanisms designed for adult use or children over age 12 can be located outside these ranges but must be within the adult reach ranges required by 4.2.5 and 4.2.6.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 8 of 26**

*4.5 Ground and Floor Surfaces.*

*4.5.1\* **General**. Ground and floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks, ramps, stairs, and curb ramps, shall be stable, firm, slip-resistant, and shall comply with 4.5. Appendix Note*

> *A4.5.1 **General**. People who have difficulty walking or maintaining balance or who use crutches, canes, or walkers, and those with restricted gaits are particularly sensitive to slipping and tripping hazards. For such people, a stable and regular surface is necessary for safe walking, particularly on stairs. Wheelchairs can be propelled most easily on surfaces that are hard, stable, and regular. Soft loose surfaces such as shag carpet, loose sand or gravel, wet clay, and irregular surfaces such as cobblestones can significantly impede wheelchair movement.*
>
> *Slip resistance is based on the frictional force necessary to keep a shoe heel or crutch tip from slipping on a walking surface under conditions likely to be found on the surface. While the dynamic coefficient of friction during walking varies in a complex and non-uniform way, the static coefficient of friction, which can be measured in several ways, provides a close approximation of the slip resistance of a surface. Contrary to popular belief, some slippage is necessary to walking, especially for persons with restricted gaits; a truly "non-slip" surface could not be negotiated.*
>
> *The Occupational Safety and Health Administration recommends that walking surfaces have a static coefficient of friction of 0.5. A research project sponsored by the Architectural and Transportation Barriers Compliance Board (Access Board) conducted tests with persons with disabilities and concluded that a higher coefficient of friction was needed by such persons. A static coefficient of friction of 0.6 is recommended for accessible routes and 0.8 for ramps.*
>
> *It is recognized that the coefficient of friction varies considerably due to the presence of contaminants, water, floor finishes, and other factors not under the control of the designer or builder and not subject to design and construction guidelines and that compliance would be difficult to measure on the building site. Nevertheless, many common building materials suitable for flooring are now labeled with information on the static coefficient of friction. While it may not be possible to compare one product directly with another, or to guarantee a constant measure, builders and designers are encouraged to specify materials with appropriate values. As more products include information on slip resistance, improved uniformity in measurement and specification is likely. The Access Board's advisory guidelines on Slip Resistant Surfaces provides additional information on this subject. Cross slopes on walks and ground or floor surfaces can cause considerable difficulty in propelling a wheelchair in a straight line.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 9 of 26**

**4.5.2 Changes in Level.** *Changes in level up to 1/4 in (6 mm) may be vertical and without edge treatment (see <u>Fig. 7(c)</u>). Changes in level between 1/4 and 1/2 in (6 mm and 13 mm) shall be beveled with a slope no greater than 1:2 (see <u>Fig. 7(d)</u>). Changes in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp that complies with <u>4.7</u> or <u>4.8</u>.*



**Figure 7(c)**
**Accessible Route**
**Changes in level**



**Figure 7(d)**
**Accessible Route**
**Changes in level**



**4.5.3\* Carpet**. *If carpet or carpet tile is used on a ground or floor surface, then it shall be securely attached; have a firm cushion, pad, or backing, or no cushion or pad; and have a level loop, textured loop, level cut pile, or level cut/uncut pile texture. The maximum pile thickness shall be 1/2 in (13 mm) (see Fig. 8(f)). Exposed edges of carpet shall be fastened to floor surfaces and have trim along the entire length of the exposed edge. Carpet edge trim shall comply with 4.5.2. Appendix Note*

> **A4.5.3 Carpet.** *Much more needs to be done in developing both quantitative and qualitative criteria for carpeting (i.e., problems associated with texture and weave need to be studied). However, certain functional characteristics are well established. When both carpet and padding are used, it is desirable to have minimum movement (preferably none) between the floor and the pad and the pad and the carpet which would allow the carpet to hump or warp. In heavily trafficked areas, a thick, soft (plush) pad or cushion, particularly in combination with long carpet pile, makes it difficult for individuals in wheelchairs and those with other ambulatory disabilities to get about. Firm carpeting can be achieved through proper selection and combination of pad and carpet, sometimes with the elimination of the pad or cushion, and with proper installation. Carpeting designed with a weave that causes a zig-zag effect when wheeled across is strongly discouraged.*



**Figure 8F**
**Carpet Pile Thickness**

**4.5.4 Gratings**. *If gratings are located in walking surfaces, then they shall have spaces no greater than 1/2 in (13 mm) wide in one direction (see Fig. 8(g)). If gratings have elongated openings, then they shall be placed so that the long dimension is perpendicular to the dominant direction of travel (see Fig. 8(h)).*



**Figure 8G**
**Gratings**

**Figure 8h**
**Gratings Orientation**

### 4.8 Ramps.

**4.8.1\* General.** Any part of an accessible route with a slope greater than 1:20 shall be considered a ramp and shall comply with 4.8. Appendix Note

> **A4.8.1 General.** Ramps are essential for wheelchair users if elevators or lifts are not available to connect different levels. However, some people who use walking aids have difficulty with ramps and prefer stairs.

**4.8.2\* Slope and Rise.** The least possible slope shall be used for any ramp. The maximum slope of a ramp in new construction shall be 1:12. The maximum rise for any run shall be 30 in (760 mm) (see Fig. 16). Curb ramps and ramps to be constructed on existing sites or in existing buildings or facilities may have slopes and rises as allowed in 4.1.6(3)(a) if space limitations prohibit the use of a 1:12 slope or less. Appendix Note

> **A4.8.2 Slope and Rise.** Ramp slopes between 1:16 and 1:20 are preferred. The ability to manage an incline is related to both its slope and its length. Wheelchair users with disabilities affecting their arms or with low stamina have serious difficulty using inclines. Most ambulatory people and most people who use wheelchairs can manage a slope of 1:16. Many people cannot manage a slope of 1:12 for 30 ft (9 m).

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 12 of 26**



**Figure 16**
**Components of a Single Ramp Run and Sample Ramp Dimensions**

**4.8.3 Clear Width.** The minimum clear width of a ramp shall be 36 in (915 mm).

**4.8.4* Landings.** Ramps shall have level landings at bottom and top of each ramp and each ramp run. Landings shall have the following features:

(1) The landing shall be at least as wide as the ramp run leading to it.

(2) The landing length shall be a minimum of 60 in (1525 mm) clear.

(3) If ramps change direction at landings, the minimum landing size shall be 60 in by 60 in (1525 mm by 1525 mm).

(4) If a doorway is located at a landing, then the area in front of the doorway shall comply with 4.13.6.   Appendix Note

> **A4.8.4 Landings.** Level landings are essential toward maintaining an aggregate slope that complies with these guidelines. A ramp landing that is not level causes individuals using wheelchairs to tip backward or bottom out when the ramp is approached.

**4.8.5* Handrails.** If a ramp run has a rise greater than 6 in (150 mm) or a horizontal projection greater than 72 in (1830 mm), then it shall have handrails on both sides. Handrails are not required on curb ramps or adjacent to seating in assembly areas. Handrails shall comply with 4.26 and shall have the following features:

(1) Handrails shall be provided along both sides of ramp segments. The inside handrail on switchback or dogleg ramps shall always be continuous.

(2) If handrails are not continuous, they shall extend at least 12 in (305 mm) beyond the top and bottom of the ramp segment and shall be parallel with the floor or ground surface (see Fig. 17).

ADAAG Codes
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 13 of 26**



**Figure 17**
**Examples of Edge Protection and Handrail Extensions**

(3) *The clear space between the handrail and the wall shall be 1 - 1/2 in (38 mm).*

(4) *Gripping surfaces shall be continuous.*

(5) *Top of handrail gripping surfaces shall be mounted between 34 in and 38 in (865 mm and 965 mm) above ramp surfaces.*

(6) *Ends of handrails shall be either rounded or returned smoothly to floor, wall, or post.*

(7) *Handrails shall not rotate within their fittings.  Appendix Note*

> **A4.8.5 Handrails.** *The requirements for stair and ramp handrails in this guideline are for adults. When children are principal users in a building or facility (e.g. elementary schools), a second set of handrails at an appropriate height can assist them and aid in preventing accidents. A maximum height of 28 inches measured to the top of the gripping surface from the ramp surface or stair nosing is recommended for handrails designed for children. Sufficient vertical clearance between upper and lower handrails (9 inches minimum) should be provided to help prevent entrapment.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 14 of 26**

***4.8.6 Cross Slope and Surfaces.*** *The cross slope of ramp surfaces shall be no greater than 1:50. Ramp surfaces shall comply with 4.5.*

***4.8.7 Edge Protection.*** *Ramps and landings with drop-offs shall have curbs, walls, railings, or projecting surfaces that prevent people from slipping off the ramp. Curbs shall be a minimum of 2 in (50 mm) high (see Fig. 17). (See above)*

***4.8.8 Outdoor Conditions.*** *Outdoor ramps and their approaches shall be designed so that water will not accumulate on walking surfaces.*

***4.9 Stairs. N/A***

***4.13 Doors.***

***4.13.3 Gates.*** *Gates, including ticket gates, shall meet all applicable specifications of 4.13.*

***4.13.5 Clear Width.*** *Doorways shall have a minimum clear opening of 32 in (815 mm) with the door open 90 degrees, measured between the face of the door and the opposite stop (see Fig. 24(a), (b), (c), and (d)). Openings more than 24 in (610 mm) in depth shall comply with 4.2.1 and 4.3.3 (see Fig. 24(e)).*

***4.13.6 Maneuvering Clearances at Doors.*** *Minimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The floor or ground area within the required clearances shall be level and clear*



**Figure 24a**
**Clear Doorway Width and Depth**
**Detail**

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 15 of 26**



**Figure 24b**
**Clear Doorway Width and Depth**
**Hinged Door**



**Figure 24c**
**Clear Doorway Width and Depth**
**Sliding Door**



**Figure 24d**
**Clear Doorway Width and Depth**
**Folding Door**

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 16 of 26**



**Figure 24e**
**Clear Doorway Width and Depth**
**Maximum Doorway Depth**



**Figure 25**
**Maneuvering Clearances at Doors**

ADAAG Codes
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 17 of 26



**Figure 25 (cont.)**
**Maneuvering Clearances at Doors**

*4.13.8\* Thresholds at Doorways.* Thresholds at doorways shall not exceed 3/4 in (19 mm) in height for exterior sliding doors or 1/2 in (13 mm) for other types of doors. Raised thresholds and floor level changes at accessible doorways shall be beveled with a slope no greater than 1:2 (see 4.5.2). Appendix Note (See below)

> *A4.13.8 Thresholds at Doorways.* Thresholds and surface height changes in doorways are particularly inconvenient for wheelchair users who also have low stamina or restrictions in arm movement because complex maneuvering is required to get over the level change while operating the door.

*4.13.9\* Door Hardware.* Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs. When sliding doors are fully open, operating hardware shall be exposed and usable from both sides. Hardware required for accessible door passage shall be mounted no higher than 48 in (1220 mm) above finished floor. Appendix Note (See below)

> A4.13.9 **Door Hardware.** Some disabled persons must push against a door with their chair or walker to open it. Applied kickplates on doors with closers can reduce required maintenance by withstanding abuse from wheelchairs and canes. To be effective, they should cover the door width, less approximately 2 in (51 mm), up to a height of 16 in (405 mm) from its bottom edge and be centered across the width of the door.

**4.16 Water Closets.**

*4.16.1 General.* Accessible water closets shall comply with 4.16.2 through 4.16.6.
EXCEPTION: Water closets used primarily by children ages 12 and younger shall be permitted to comply with 4.16.7.

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 18 of 26**

**4.16.2 Clear Floor Space**. *Clear floor space for water closets not in stalls shall comply with Fig. 28. Clear floor space may be arranged to allow either a left-handed or right-handed approach.*



**Figure 28**
**Clear Floor Space at Water Closets**

**4.16.3* Height**. *The height of water closets shall be 17 in to 19 in (430 mm to 485 mm), measured to the top of the toilet seat (see Fig. 29(b)). Seats shall not be sprung to return to a lifted position.* Appendix Note (See below)

> **A4.16.3 Height**. *Height preferences for toilet seats vary considerably among disabled people. Higher seat heights may be an advantage to some ambulatory disabled people, but are often a disadvantage for wheelchair users and others. Toilet seats 18 in (455 mm) high seem to be a reasonable compromise. Thick seats and filler rings are available to adapt standard fixtures to these requirements.*



**(b)**
**Side Wall**

**Figure 29b**
**Grab Bars at Water Closets**
**Side Wall**





**4.16.4\* Grab Bars**. *Grab bars for water closets not located in stalls shall comply with 4.26 and Fig. 29. The grab bar behind the water closet shall be 36 in (915 mm) minimum. Appendix Note (See below)*



**Figure 29
Grab Bars at Water Closets**

**A4.16.4 Grab Bars.** *Fig. A6(a) and (b) show the diagonal and side approaches most commonly used to transfer from a wheelchair to a water closet. Some wheelchair users can transfer from the front of the toilet while others use a 90-degree approach. Most people who use the two additional approaches can also use either the diagonal approach or the side approach.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 20 of 26**

   

1. Takes transfer position, swings footrest out of the way, sets brakes.
2. Removes armrest, transfers.
3. Moves wheelchair out of the way, changes position (some people fold chair or pivot it 90° to the toilet).
4. Positions on toilet, releases brake.

**(a)**
**Diagonal Approach**

  

1. Takes transfer position, removes armrest, sets brakes.
2. Transfers.
3. Positions on toilet.

**(b)**
**Side Approach**

**Figure A6**
**Wheelchair Transfers**

**4.16.5\* Flush Controls.** *Flush controls shall be hand operated or automatic and shall comply with 4.27.4. Controls for flush valves shall be mounted on the wide side of toilet areas no more than 44 in (1120 mm) above the floor. Appendix Note (See below)*

> **A4.16.5 Flush Controls.** *Flush valves and related plumbing can be located behind walls or to the side of the toilet, or a toilet seat lid can be provided if plumbing fittings are directly behind the toilet seat. Such designs reduce the chance of injury and imbalance caused by leaning back against the fittings. Flush controls for tank-type toilets have a standardized mounting location on the left side of the tank (facing the tank). Tanks can be obtained by special order with controls mounted on the right side. If administrative authorities require flush controls for flush valves to be located in a position that conflicts with the location of the rear grab bar, then that bar may be split or shifted toward the wide side of the toilet area.*

**4.16.6 Dispensers.** *Toilet paper dispensers shall be installed within reach, as shown in Fig. 29(b).(See above) Dispensers that control delivery, or that do not permit continuous paper flow, shall not be used.*

*4.20 Bathtubs.*

*4.20.1 General. Accessible bathtubs shall comply with 4.20.*

*4.20.2 Floor Space. Clear floor space in front of bathtubs shall be as shown in Fig. 33.*



**Figure 33**
**Clear Floor Space at Bathtubs**

*Fig. 33(a) With Seat in Tub. If the approach is parallel to the bathtub, a 30 inch (760 mm) minimum width by 60 inch (1525 mm) minimum length clear space is required alongside the bathtub. If the approach is perpendicular to the bathtub, a 48 inch (1220 mm) minimum width by 60 inch (1525 mm) minimum length clear space is required.*

*Fig. 33(b) With Seat at Head of Tub. If the approach is parallel to the bathtub, a 30 inch (760 mm) minimum width by 75 inch (1905 mm) minimum length clear space is required alongside the bathtub. The seat width must be 15 inches (380 mm) and must extend the full width of the bathtub.*

*4.20.3 Seat. An in-tub seat or a seat at the head end of the tub shall be provided as shown in Fig. 33 and 34. The structural strength of seats and their attachments shall comply with 4.26.3. Seats shall be mounted securely and shall not slip during use.*



**Figure 34**
**Grab Bars at Bathtubs**

*Fig. 34(a) With Seat in Tub. At the foot of the tub, the grab bar shall be 24 inches (610 mm) minimum in length measured from the outer edge of the tub. On the back wall, two grab bars are required. The grab bars mounted on the back (long) wall shall be a minimum 24 inches (610 mm) in length located 12 inches (305 mm) maximum from the foot of the tub and 24 inches (610 mm) maximum from the head of the tub. One grab bar shall be located 9 inches (230 mm) above the rim of the tub. The others shall be 33 to 36 inches ( 840 mm to 910 mm) above the bathroom floor. At the head of the tub, the grab bar shall be a minimum of 12 inches (305 mm) in length measured from the outer edge of the tub.*

*Fig. 34(b) With Seat at Head of Tub. At the foot of the tub, the grab bar shall be a minimum of 24 inches (610 mm) in length measured from the outer edge of the tub. On the back wall, two grab bars are required. The grab bars mounted on the back wall shall be a minimum of 48 inches (1220 mm) in length located a maximum of 12 inches (305 mm) from the foot of the tub and a maximum of 15 inches (380 mm) from the head of the tub. Heights of grab bars are as described above.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 23 of 26**

*4.20.4 Grab Bars. Grab bars complying with <u>4.26</u> shall be provided as shown in <u>Fig. 33</u> and <u>34</u>.*

*4.20.5 Controls. Faucets and other controls complying with <u>4.27.4</u> shall be located as shown in <u>Fig. 34</u>.*

*4.20.6 Shower Unit. A shower spray unit with a hose at least 60 in (1525 mm) long that can be used both as a fixed shower head and as a hand-held shower shall be provided.*

*4.20.7 Bathtub Enclosures. If provided, enclosures for bathtubs shall not obstruct controls or transfer from wheelchairs onto bathtub seats or into tubs. Enclosures on bathtubs shall not have tracks mounted on their rims.*

*4.26.1\* General. All handrails, grab bars, and tub and shower seats required to be accessible by <u>4.1</u>, <u>4.8</u>, <u>4.9</u>, <u>4.16</u>, <u>4.17</u>, <u>4.20</u> or <u>4.21</u> shall comply with 4.26. <u>Appendix Note</u>*

> *A4.26.1 General. Many disabled people rely heavily upon grab bars and handrails to maintain balance and prevent serious falls. Many people brace their forearms between supports and walls to give them more leverage and stability in maintaining balance or for lifting. The grab bar clearance of 1-1/2 in (38 mm) required in this guideline is a safety clearance to prevent injuries resulting from arms slipping through the openings. It also provides adequate gripping room.*

*4.26.2\* Size and Spacing of Grab Bars and Handrails. The diameter or width of the gripping surfaces of a handrail or grab bar shall be 1-1/4 in to 1-1/2 in (32 mm to 38 mm), or the shape shall provide an equivalent gripping surface. If handrails or grab bars are mounted adjacent to a wall, the space between the wall and the grab bar shall be 1-1/2 in (38 mm) (see <u>Fig. 39(a)</u>, <u>(b)</u>, <u>(c)</u>, and <u>(e)</u>). Handrails may be located in a recess if the recess is a maximum of 3 in (75 mm) deep and extends at least 18 in (455 mm) above the top of the rail (see <u>Fig. 39(d)</u>). <u>Appendix Note</u>*

> *A4.26.2 Size and Spacing of Grab Bars and Handrails. This specification allows for alternate shapes of handrails as long as they allow an opposing grip similar to that provided by a circular section of 1-1/4 in to 1-1/2 in (32 mm to 38 mm).*

   

**Figure 39a**　　　**Figure 39b**　　　**Figure 39c**　　　**Figure 39e**
**Size and Spacing of Handrails and Grab Bars**
**Handrail**

*LB*



**Figure 39d**
**Size and Spacing of Handrails and Grab Bars**
**Handrail**

**4.26.3 Structural Strength.** *The structural strength of grab bars, tub and shower seats, fasteners, and mounting devices shall meet the following specification:*

*(1) Bending stress in a grab bar or seat induced by the maximum bending moment from the application of 250 lbf (1112N) shall be less than the allowable stress for the material of the grab bar or seat.*

*(2) Shear stress induced in a grab bar or seat by the application of 250 lbf (1112N) shall be less than the allowable shear stress for the material of the grab bar or seat. If the connection between the grab bar or seat and its mounting bracket or other support is considered to be fully restrained, then direct and torsional shear stresses shall be totaled for the combined shear stress, which shall not exceed the allowable shear stress.*

*(3) Shear force induced in a fastener or mounting device from the application of 250 lbf (1112N) shall be less than the allowable lateral load of either the fastener or mounting device or the supporting structure, whichever is the smaller allowable load.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 25 of 26**

*(4) Tensile force induced in a fastener by a direct tension force of 250 lbf (1112N) plus the maximum moment from the application of 250 lbf (1112N) shall be less than the allowable withdrawal load between the fastener and the supporting structure.*

*(5) Grab bars shall not rotate within their fittings.*

***4.26.4 Eliminating Hazards***. *A handrail or grab bar and any wall or other surface adjacent to it shall be free of any sharp or abrasive elements. Edges shall have a minimum radius of 1/8 in (3.2 mm).*

***4.27 Controls and Operating Mechanisms.***

***4.27.1 General***. *Controls and operating mechanisms required to be accessible by 4.1 shall comply with 4.27.*

***4.27.2 Clear Floor Space***. *Clear floor space complying with 4.2.4 that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment.*

***4.27.3\* Height***. *The highest operable part of controls, dispensers, receptacles, and other operable equipment shall be placed within at least one of the reach ranges specified in 4.2.5 and 4.2.6. Electrical and communications system receptacles on walls shall be mounted no less than 15 in (380 mm) above the floor. Appendix Note*

> *EXCEPTION: These requirements do not apply where the use of special equipment dictates otherwise or where electrical and communications systems receptacles are not normally intended for use by building occupants.*

> ***A4.27.3 Height***. *Fig. A8 further illustrates mandatory and advisory control mounting height provisions for typical equipment.*

> *Electrical receptacles installed to serve individual appliances and not intended for regular or frequent use by building occupants are not required to be mounted within the specified reach ranges. Examples would be receptacles installed specifically for wall-mounted clocks, refrigerators, and microwave ovens. For guidance on children's reach ranges, see A4.2.5 & 4.2.6.*

**ADAAG Codes**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 26 of 26**



Fig. A8
Control Reach Limitations

**Figure A8**
**Control Reach Limitations**

**4.27.4 Operation.** *Controls and operating mechanisms shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate controls shall be no greater than 5 lbf (22.2 N).*







Kohler K-716 ADA Compliant Bathtub
Note: Bathtub configuration
shall be as per ADAAG Figure 33(b)
with Grab bars as per ADAAG Figure 34(b)

Tile Seat

NO CABINET TO BE INSTALLED
New cabinet floor to bottom of coffer
w/ mirrored doors
17" X 21 3/4" Coffer
in Ceiling Approx 74" AFF

Attachment A Exhibit 2    LB

Biscamp Proposed Bathroom

**Attachment B to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 1 of 4**

Plaintiff Victor McPeters and plaintiff Larry Biscamp continue to reside at the Oceanview Apartments. Plaintiff Bernard Walker no longer lives there.

The parties wish to make every effort to assure that (1) any issues the parties may have relating to the physical condition of Victor McPeters' apartment and Larry Biscamp's apartment are addressed promptly; and (2) any perceived need for future litigation is minimized.

Accordingly, the parties agree as follows. This agreement applies to any requests for modifications, maintenance or repairs to the McPeters and Biscamp apartments that Mr. McPeters or Mr. Biscamp may make at any time in the future during their respective tenancies. As used below, the word "Tenant" refers to Mr. McPeters with respect to issues relating to Mr. McPeters' apartment, and refers to Mr. Biscamp with respect to issues relating to Mr. Biscamp's apartment.

1. Procedure For Resolving Issues Relating to Any Future Requests For Modifications, Maintenance Or Repairs

Tenant will cooperate with Oceanview's management to allow repairmen, maintenance workers and contractors to enter into Tenant's apartment in order to address any future requests for modifications, maintenance or repairs. The repairman or management shall call the tenant to arrange for a mutually acceptable period of four hours during which the repairman can arrive to address the tenant's request for modifications, maintenance or repairs. Tenant shall be required to grant access to the repairman during the 4-hour period and allow the repairman to make the repair from the time of arrival onward, but not past 5:00 p.m. If the job is not completed by that time, then the parties shall schedule a new mutually acceptable 4-hour window for the repairman to obtain access to continue making the repair, from the time of arrival onward, but not past 5:00 p.m.

If the tenant does not comply with his duty to provide both access and adequate time for repair, as set forth in the last paragraph, then the repairman will not be expected to complete the repair or modification at that time, and the repair may be placed at the end of the repairman's then current list of repairs for other tenants, and the parties may then seek to arrange for another mutually acceptable

**Attachment B to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 2 of 4**

four-hour window in which the repairman can arrive, after the repairman takes care of all other then pending repairs for all other tenants.

If an emergency repair is required, then the provisions above shall not apply, and the provisions of California law and tenant's lease relating to such emergency repairs shall apply.

If Tenant fails to allow access as required above on three or more consecutive occasions with respect to the same repair, the failure shall be considered a lease violation for conduct that interferes with the proper administration of the apartment complex.

Each Tenant will be required to sign an acknowledgment after a particular job is completed, specifying that the job was completed satisfactorily, or alternately, specifying the problems with the job that still remain. The Tenant shall sign a work order, acknowledging completion of the job, at the time of the job, and shall notify management at the Oceanview office within two weeks after any deficiency in the job becomes apparent.

Whenever Tenant requests modification, maintenance or repairs to his apartment, Tenant shall first call the apartment manager to request modification, maintenance or repairs. Within 10 days, the manager will contact Tenant if necessary to discuss the requested work, and either the requested work shall be commenced and pursued diligently to completion, or if the manager believes the work cannot be commenced within 10 days or does not agree to do the work requested, the manager will contact his superiors as determined by defendant and defendant shall make a determination whether the work shall be done, and shall then provide a written response to plaintiff explaining the reason the requested work will not be commenced within 10 days, or why Tenant's requested work will not be done and will name a designated person to conduct a meet and confer to discuss defendant's response with Tenant. Tenant may then request a meet and confer within 10 days with whomever defendant designates as the person for the meet and confer to discuss his request. Defendant's representative will meet with Tenant to discuss any issues involved in the request, what the proposed resolution is, and to set a timetable for further action, if further action is to be taken. The meet and confer may take place by telephone or

Attachment B to Consent Decree and Order
Walker et al., v, Oceanview Gardens, LLC et al.
CASE NO. C05-3344JL
Page 3 of 4

in person at the Oceanview Apartments. Both parties agree to act in good faith and provide any information required to make any decisions.

If Tenant is still not satisfied with the outcome after meeting and conferring as set forth above, or if defendant's representatives do not respond to Tenant as set forth above, Tenant shall, prior to filing any lawsuit, properly fill out and send the notice attached hereto as **Exhibit 3** to Bill McClure, Evans Property Management, 1000 Broadway, Suite 300, Oakland, California, 94607, and shall deliver a copy to the Oceanview Manager and shall cooperate with defendant's management and shall attend any meetings by telephone or at Oceanview that defendant requests to try to resolve the matter to be conducted within 10 business days of sending defendant notice as set forth in **Exhibit 3**. Both parties agree to act in good faith and provide any information required to make any decisions. In the event defendant does not agree to undertake the repairs, maintenance or alterations on terms agreeable to Tenant, defendant will provide a written response containing the basis for defendant's decision within 10 days of the meet and confer.

Plaintiff shall send the notice attached as **Exhibit 3** by Federal Express, with all charges prepaid. Concurrent with the signing of this consent decree, defendants are providing plaintiffs Biscamp and McPeters with one such properly addressed Federal Express envelope with all charges prepaid. If a plaintiff uses the envelope to send the notice attached as **Exhibit 3**, plaintiff may request that defendants provide plaintiff with another such envelope. Defendant shall provide it for future use. The request shall be made to defendant's portfolio manger in charge of the Oceanview Gardens Apartments at the time in question.

If plaintiff does not receive a written response that is acceptable to plaintiff within 30 days after sending the notice set forth as **Exhibit 3** or within 10 days after a meet and confer with management pursuant to the last paragraph, whichever is latest, then plaintiff is free to commence any action provided for in law.

The procedures set forth in this section shall govern the relations between the parties relating to modifications, maintenance, repair and other matters relating to the physical condition of Tenant's apartment and the physical condition of the surrounding grounds for the duration of Tenant's tenancy at Oceanview. No new

**Attachment B to Consent Decree and Order**
**Walker et al., v, Oceanview Gardens, LLC et al.**
**CASE NO. C05-3344JL**
**Page 4 of 4**

lawsuit shall be filed alleging any violation of any law relating to the physical condition of the apartment or grounds or alleging a failure to accommodate a disability unless Tenant has first followed the procedures set forth herein. In this way, the parties hope that all complaints will receive very careful attention in a timely manner and that there will be no occasion or need for any litigation.

NOTICE OF INTENT TO COMMENCE LAWSUIT

PURSUANT TO THE PROCEDURES SET FORTH IN A CONSENT DECREE between Larry Biscamp and Victor McPeters, as plaintiffs, and Evans Property Management, Inc., et al, U.S.District Court case number C05-3344 JL,

 I AM HEREBY GIVING YOU NOTICE THAT I AM CONSIDERING FILING ANOTHER LAWSUIT AGAINST A.F.EVANS, INC.,Evans Property Mangement, Inc. and /or Oceanview Gardens, LLC.

I AM GIVING THIS NOTICE IN AN EFFORT TO AVOID LITIGATION.

MY COMPLAINT IS (specify a complaint relating to a failure of Oceanview to properly modify, maintain or repair)

_____
_____
_____

I REPRESENT THAT I HAVE NOTIFIED THE MANAGER of this problem but have not received a response or have not received an adequate response.  I either have not been offered a chance to meet and confer with management, or have participated in a meet and confer, and the result was not acceptable to me.

PLEASE CONTACT ME IMMEDIATELY TO RESOLVE THIS MATTER. THE CONSENT DECREE ALLOWS ME TO FILE ANOTHER LAWSUIT AS ALLOWED BY LAW IF THE MATTER IS NOT RESOLVED TO MY SATISFACTION WITHIN 30 DAYS AFTER I SEND THIS NOTICE OR WITHIN 10 DAYS AFTER ANY ADDITIONAL MEET AND CONFER YOU MAY OFFER ME, WHICHEVER COMES LAST.

I PREFER TO RESOLVE THIS MATTER INFORMALLY RATHER THAN TO LITIGATE BUT I MUST HEAR FROM YOU PROMPTLY.

_____          _____
Signature                        Print Name

_____
Address

*Attachment B    LB*